ADDELINE E. KLINE, as Committee of BURDETTE KLINE, Appellant, v. EZRA BISHOP, Respondent.

Fourth Department, May 9, 1951.

278

*John C. Carmer, Jr.,* and *Albert Averbach* for appellant.
*John W. Miles* for respondent.

*Per Curiam.*  About 5:10 P.M., in the late afternoon or early evening of November 10, 1948, the incompetent, Burdette Kline, while walking along the northerly side of West Main Street at or near the intersection of Guild Street near the corporate limits of the village of Wolcott, was struck by an automobile being operated by the defendant, sustaining injuries resulting in his incompetency.

The circumstances surrounding the happening of the accident presented questions for consideration of the jury as to the negligence of the defendant and contributory negligence of the incompetent.  Were it not for errors occurring during the course of the trial, we would feel compelled to accept the finding of the jury.  We feel, however, that the errors were of such a character that in the interest of justice, a new trial should be granted.

Whether the incompetent was deprived of a fair trial should be determined, not only in the light of his inability to give his version of the accident, but also having in mind that the only eye witnesses to the accident were the defendant and his wife. It is our opinion that the court erred in striking out the ordinance of the village of Wolcott limiting speed of automobiles to twenty-five miles per hour upon the theory that defendant's testimony as to the speed given upon his examination before trial did not indicate violation of the ordinance.  At the conclusion of the charge, the court was asked to charge paragraph (d) of subdivision 2 of section 56 of the Vehicle and Traffic Law which limits speed to twenty-five miles an hour when approaching or entering an intersection.  The court proceeded to read the section and then aborted its effect by stating "Well, there is no testimony that there was any speed here in excess of twenty-five miles".  Following this the court charged that the jury had a right to determine from all the evidence whether the speed was in excess of twenty-five miles an hour, taking into consideration in determining that question how far the incompetent was thrown by the impact and how far the automobile traveled after coming into collision with the incompetent before it was brought to a stop.

The defendant testified upon his examination before trial that he was traveling twenty-five miles an hour and that he brought his car to a stop about twenty-five to thirty feet beyond where the incompetent lay following the collision.  Apparently the court took the position that plaintiff's attorney having read in evidence defendant's examination before trial, was bound

by the testimony given upon such examination. The court refused to permit a State trooper to testify as to the distance defendant's car stood beyond where the incompetent lay. In an attempt to show how far the incompetent's body was thrown or dragged, plaintiff called as a witness one Lloyd Gay. He finally succeeded in testifying to a mark some twelve to eighteen feet in length in the immediate vicinity where the incompetent's body lay. We seriously doubt, however, if the jury associated the mark with the accident in view of the court's remarks made a short time prior thereto: " I don't think that you have established now that he [the witness] ever saw the mark, or what made it."

Throughout the trial, defendant's attorney tried to get before the jury the fact that the incompetent imbibed too freely and became intoxicated on occasions. It seems that some years before, he froze his feet and had to have his toes amputated. Counsel was not permitted to obtain from the doctor the cause of the freezing of his toes but it is very apparent what counsel had in mind when he attempted to examine the doctor on that subject if we look at the cross-examination of the incompetent's employer. " Q. Do you concede, Mr. Harper, that he was a good worker when he was sober, but otherwise you would not have him? " Objection was made to the question as improper in form and sustained. The court was then asked to instruct the jury to disregard the question. This the court refused to do upon the ground that no answer had been given. The witness was then questioned about the incompetent's feet. He said he had a funny walk; that somebody told him that he froze his toes. " Q. Did you hear anything else about his toes? About his toes being frozen, and as to how they got frozen?" " A. Well, I don't know anything about it." Such questions were very prejudicial whether answered or not. Their purpose was apparent and the court should not have hesitated to instruct the jury that there was no evidence of intoxication in the case and that the question of intoxication was not before it for consideration. Unless the incompetent could become intoxicated in ten minutes, there was no justification for the questions. He left his work at five o'clock; the accident occurred at ten after five. There was, according to the doctor who rendered first aid, no evidence of liquor upon his breath.

The judgment and order should be reversed on the law and facts and a new trial granted, with costs to the appellant to abide the event.

All concur, except TAYLOR, P. J., who dissents and votes for affirmance on the ground that the record presents only questions of fact which have been properly determined by the jury.

Present — TAYLOR, P. J., McCURN, VAUGHAN, KIMBALL and PIPER, JJ.

Judgment and order reversed on the law and facts and a new trial granted, with costs to the appellant to abide the event.